UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Ariadna Mateo, | Chapter 7 Case No. 04-13404-rdd |
| Debtor. | |

| | |
|---|---|
| Ariadna Mateo, | |
| Plaintiff, | |
| - against - | Adv. Pro. No. 06-01917-rdd |
| Chase Bank USA, NA and PRA III LLC, | |
| Defendant. | |

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO MOTION
OF CHASE BANK USA, NA**

Comes now the Plaintiff, Ariadna Mateo, by and through her attorneys, as a supplement to the previously-filed response to the Defendant's motion to dismiss.

**INTRODUCTION**

Plaintiff counsel does not seek to reintroduce this matter, nor does Plaintiff seek to supplement any of the facts stated herein.

**ARGUMENT**

**DEFENDANT HAS ACKNOWLEDGED THE REQUIREMENT OF UPDATING TRADELINES OF DISCHARGED DEBTS AFTER BANKRUPTCY, AND HAS ADOPTED A POLICY TO COMPORT WITH SUCH REQUIREMENT**

Defendant, in its moving papers as well as in its reply papers, claims that it does not recognize a requirement to update reporting of tradelines to indicate the discharge of a debt in bankruptcy. Rather, Defendant claims that so long as the last reporting of the debt pre-bankruptcy

was truthful and accurate then no further action need be taken. Plaintiff's position has been adequately stated in the opposition papers previously submitted.

Plaintiff, however, wishes to draw this Court's attention to the case of *Nelson v. Chase Manhattan Mortgage Corp.*, Case No. 00-15946 (D.NV. 2000), D.C. No. CV-99-00290-JBR(RLH) (9th Cir. 2002). In the *Nelson* case, Plaintiff became a co-signatory on a mortgage loan from Chase. On February 15, 1998, the co-signatory declared bankruptcy. Plaintiff continued to pay the amounts due on the mortgage in a timely manner but experienced difficulty in obtaining financing after the obligor's bankruptcy. In September 1998, Nelson asked Experian Information Solutions, Inc. ("Experian") for his credit profile. Experian provided him with a report referring to the account with Chase. Regular payments were shown made up to January 8, 1997, with a balance of $110,011 then showing. The report stated: "As of 2/15/98 this account is included in a discharge through bankruptcy chapter 7, 11 or 12." A copy of the opinion of the 9th Circuit in this matter is annexed hereto as Exhibit A.

The *Nelson* plaintiff wrote Experian requesting it to investigate "disputed matters" in the credit report, indicating that he had never filed for bankruptcy and asking for deletion of the bankruptcy reference. He copied this letter to Chase.

On January 4, 1998, Chase wrote Nelson stating:"At the time we receive notice of a bankruptcy filing, we are required to note the appropriate account is in bankruptcy, regardless of whether the account is current or past due, to prevent contact with the party[ies] involved in violation of the bankruptcy laws." A copy of the January 4, 1998 Correspondence from Chase to Nelson is annexed hereto as Exhibit B.

The January 4, 1998 Correspondence is clear indication that Chase is aware of the requirement that it update its reporting of a debt once such obligation is discharged in bankruptcy.

As such, the January 4, 1998 Correspondence is proof that Defendant in this action has put forth a disingenuous argument that it molds to suit its purposes depending on the issue being litigated.

### WAIVER OF MEMORANDUM OF I.AW

Plaintiff respectfully requests that the Court waive the requirement of S.D.N.Y. LBR 9013-1 for the filing of a separate memorandum of law in connection with this matter, but movant reserves the right to file a brief in the event that such waiver is not granted.

WHEREFORE based upon the above and foregoing the Plaintiff respectfully prays to the Court as follows:

- A. That this court strike the request to compel arbitration contained in the Defendant's motion;
- B. That the court deny the Defendant's motion to dismiss; and
- C. That the Plaintiff have such other and further relief as the Court may deem just and proper.

Dated: March 17, 2007
New York, NY

FleischmanLaw, P.C.

By: _____/s/ Jay S. Fleischman_____
Jay S. Fleischman, Esq. (JF 5433)
Attorneys for Plaintiff
15 Maiden Lane, Suite 2000
New York, NY 10038
212.785.1136
jay@drlcny.com (not for service)

**FOR PUBLICATION**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

TOBY D. NELSON,

Plaintiff-Appellant,

v.

CHASE MANHATTAN MORTGAGE CORP.,

Defendant-Appellee.

No. 00-15946

D.C. No.
CV-99-00290-
JBR(RLH)

OPINION

Appeal from the United States District Court
for the District of Nevada
Johnnie B. Rawlinson, District Judge, Presiding

Argued and Submitted
January 16, 2002--San Francisco, California

Filed March 1, 2002

Before: Alfred T. Goodwin, John T. Noonan and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Noonan

3385

**COUNSEL**

Richard J. Rubin, Santa Fe, New Mexico, and Michael D. Gliner, Las Vegas, Nevada, for the plaintiff-appellant.

Gerald D. Waite and Nikki Baker, Kummer Kaempfer Bonner & Renshaw, Las Vegas, Nevada, for the defendant-appellee.

John F. Daly, Federal Trade Commission, Washington, D.C., for the amicus in support of the appellant.

_____

3388

**OPINION**

NOONAN, Circuit Judge:

Toby D. Nelson ("Nelson") appeals the judgment of the district court for the District of Nevada dismissing his suit under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681u ("the FCRA") for failure to state a cause of action against the defendant Chase Manhattan Mortgage Corporation ("Chase"). Holding that section 1681s-2(b) does create a cause of action for a consumer against a furnisher of credit information, we reverse the judgment of the district court.

FACTS

According to his complaint and attached exhibits, Nelson on February 2, 1995 became a co-signatory with Anthony Proietti ("Proietti") on a mortgage loan of $119,950 from Chase. On February 15, 1998, Proietti declared bankruptcy. Nelson continued to pay the amounts due on the mortgage in a timely manner.

Nelson, however, experienced difficulty in obtaining financing after Proietti's bankruptcy. In September 1998, Nelson asked Experian Information Solutions, Inc. ("Experian") for his credit profile. Experian provided him with a report referring to the account with Chase. Regular payments were shown made up to January 8, 1997, with a balance of $110,011 then showing. The report stated: "As of 2/15/98 this account is included in a discharge through bankruptcy chapter 7, 11 or 12."

On December 2, 1998, Nelson wrote Experian requesting it to investigate "disputed matters" in the credit report. Nelson stated that he had never declared bankruptcy and that the bankruptcy noted was that of the co-obligor. He asked for deletion of the bankruptcy reference. He copied this letter to Chase.

3389

On January 4, 1998, Chase wrote Nelson stating:"At the time we receive notice of a bankruptcy filing, we are required to note the appropriate account is in bankruptcy, regardless of whether the account is current or past due, to prevent contact with the party[ies] involved in violation of the bankruptcy laws . . . . This status is not a reflection of which of the borrowers actually filed bankruptcy, but merely a statement that the account itself is affected by the bankruptcy filing." Chase went on to say that prudent lenders should follow up on the report and determine whether the consumer in question "had actually filed the bankruptcy action." Chase apologized for "any inconvenience" to Nelson. It promised to inform credit bureaus that "the account has been affected by a bankruptcy filed by one, but not all, of the borrowers."

Nelson continued to have difficulties getting credit. On March 5, 1999, Nelson received a report from Equifax showing his credit history with the notation "included in bankruptcy 8/98," opposite the entry for Chase. On March 6, 1999, U.S. Bank of Minneapolis denied his application for a truck loan "due to bankruptcy filing on your credit bureau report." On March 7, 1998, Nelson wrote Equifax, like Experian a credit reporting agency ("CRA"), disputing this report and requesting an investigation.

PROCEEDINGS

On March 8, 1999, Nelson filed this suit against Chase, which ultimately moved to dismiss his third amended complaint. On April 14, 2000, the district court granted the motion to dismiss. The court ruled that the FCRA, 18 U.S.C.§ 1681s-2(b) did not create a private action.

Nelson appeals.

ANALYSIS

The FCRA was enacted in 1970. It was prefaced with a congressional finding that "unfair credit methods undermine

3390

the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1). Section 1681n provides: "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer . . . or damages of not less than $100 or more than $1,000" plus reasonable attorney's fees. In similar terms, § 1681o establishes comparable liability for negligent non-compliance. That with these words Congress created a private right of action for consumers cannot be doubted. That right is to sue for violation of any requirement "imposed with respect to any consumer." What we have to decide is whether sections 1681n and 1681o permit suit against a furnisher of credit reporting information that violates the duties imposed under section 1681s-2. Inspection of this section in its entirety is necessary.

Section 1681s-2(a) begins with a flat prohibition in (1)(A) directed against "[a] person" furnishing information "relating to a consumer" to a CRA "if the person knows or consciously avoids knowing that the information is inaccurate." This prohibition is reinforced in subsection (1)(B) by a prohibition of furnishing inaccurate information after notice of actual inaccuracy from the affected consumer. Subsection (2) imposes a duty on regular furnishers of credit information to correct and update the information they provide so that the information is "complete and accurate." Subsection (3) imposes a duty on such furnishers to notify CRAs if a consumer disputes the information furnished. Subsection (4) obliges furnishers to notify the CRA of the closure of a consumer's account, and subsection (5) imposes a similar obligation to notify the CRA of delinquent accounts.

Most of the provisions of § 1681s-2(a) are for the protection of consumers. There would be no doubt that a consumer could sue for their violation under sections 1681n & o were it not for §§ 1681s-2(c) and (d). Subsection (c) expressly

3391

provides that sections 1681n & o "do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681s(c)(1)(B) of this title." The referenced section permits certain suits by States for damages. This limitation on liability and enforcement is reinforced by subsection (d) of § 1681s-2, which provides that subsection (a) "shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section." Consequently, private enforcement under §§ 1681n & o is excluded.

We turn to subsection 1681s-2(b). This section specifies what happens after a CRA receives notice "pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of information provided by a person " to the CRA. The person, i.e., the furnisher of the disputed information, has four duties: to conduct an "investigation with respect to the disputed information;" to review all relevant information provided by the CRA; to report the results of its investigation to the CRA; and if the investigation finds the information is incomplete or inaccurate to report those results "to all [nationwide] consumer reporting agencies to which the person furnished the information."

Chase argues that as consumers are unmentioned by name in § 1681s-2(b), this section does not impose a requirement "with respect to any consumer," so the private right of action under §§ 1681n & o do not apply to § 1681s-2(b). The argument has a specious plausibility. It overlooks the fact that the notice which starts the process provided by (b) is notice of a dispute as to the accuracy or completeness of information "contained in a consumer's file." See 15 U.S.C. § 1681i(a)(1)(A). The information to be investigated does not exist in the air. It is hard to say that, when information in a consumer's file is the issue, there is no requirement "with respect to a consumer." The information is disputed by the consumer. See id. Its completeness or accuracy is of prime concern to the consumer.

This reading of the statute might be challenged by the observation that § 1681s-2(a) carefully prevents a consumer from suing a furnisher of even information known by the furnisher to be inaccurate. If Congress didn't want the irresponsible furnisher privately sued under (a), why should Congress have provided for private suit under (b)? This doubt chimes with the argument that subsections (c) and (d) of § 1681s-2 don't mention (b) because (b) creates no private right of action at all.

The answer to the objection was given in oral argument by counsel for amicus Federal Trade Commission, as follows. It can be inferred from the structure of the statute that Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished. Hence, Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies. But Congress did provide a filtering mechanism in § 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher. See 15 U.S.C. § 1681i(a)(3) (allowing CRA to terminate reinvestigation of disputed item if CRA "reasonably determines that the dispute by the consumer is frivolous or irrelevant"). With this filter in place and opportunity for the furnisher to save itself from liability by taking the steps required by § 1681s-2(b), Congress put no limit on private enforcement under §§ 1681n & o.

This answer is strengthened by the amendment of §§ 1681n & o effected in 1996. Before amendment, §§ 1681n & o provided for suit against a CRA or against a user of credit information, but not against a furnisher. When the statute was amended, "any person" was made open to suit. See Pub.L. 104-208 at § 2412; 110 Stat. 3009 at §2412 (1996) ("section 616 of the [FCRA] . . . is amended by striking `Any consumer reporting agency or user of information which' and inserting `(a) IN GENERAL, any person who' "). As counsel for the FTC observed, there are involved in any credit transaction

3393

only the consumer, the CRAs, the user of the credit reports and the furnishers of the credit information. As consumers would not be made subject to suit by consumers, and as CRAs and users were already suable, who else except furnishers could Congress have had in mind when it introduced "any person" into the statute? Where, other than under § 1681s-2(b) would furnishers be suable by consumers? In oral argument, counsel for Chase conceded that Chase had no answers to these questions. We cannot suppose that Congress made an amendment without a purpose.

That purpose, to provide some private remedy to injured consumers, coheres with what we see as a primary purpose for the FCRA, to protect consumers against inaccurate and incomplete credit reporting. The statute has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of credit information. It is not for a court to remake the balance struck by Congress, or to introduce limitations on an express right of action where no limitation has been written by the legislature.

REVERSED and REMANDED.

3394

**CHASE**

Chase Manhattan Mortgage Corporation
3415 Vision Drive
Columbus, OH 43219
1-800-848-9136 Customer Service
1-800-582-0542 TDD / Text Telephone

January 4, 1999

Toby D. Nelson
5320 White Coyote Place
Las Vegas, NV 89130

Dear Mr. Nelson:

Thank you for taking the time to contact us regarding the status of your mortgage reported to credit bureau. Chase understands the concern of our mortgagors regarding their credit reports and would like to explain how reporting on accounts affected by bankruptcy occurs.

At the time we receive notice of a bankruptcy filing, we are required to note the appropriate account is in bankruptcy, regardless of whether the account is current or past due, to prevent contact with the party(ies) involved in violation of the bankruptcy laws. The notation of the bankruptcy filing is then translated monthly to the credit bureaus to whom Chase reports with the industry standard verbiage "Debt includes in or discharged through Bankruptcy". This status is not a reflection of which of the borrowers actually filed bankruptcy, but merely a statement that the account itself is affected by a bankruptcy filing. The payment status of the mortgage is not altered by the notation of the bankruptcy.

It is the responsibility of every prudent lender, or other concerned party who is considering extending credit, to carefully review any report which includes this industry standard statement. This should include reviewing the current status of the debt; determining whether the account is a Single or Joint account; and reviewing the Public Records which would indicate whether the consumer/borrower in question had actually filed the bankruptcy action or whether a co-borrower filed.

We apologize for any inconvenience this standard reporting has caused you. Though we have correctly reported that the account is in bankruptcy, as a courtesy to you, we will send letters to the credit bureaus indicating the account has been affected by a bankruptcy filed by one, but not all, of the borrowers and asking that they add this statement to your reported to alert any potential new lenders. If the issue arises again, you should clarify with the prospective lender that you were not the party who filed bankruptcy.

EXHIBIT 2

If you have any additional concerns, please call 1-800-848-9136.

Sincerely,

Edwin C. Taylor
Chase Manhattan Mortgage Corporation
Bankruptcy Department